## CHRISTIE SCOW CORPORATION v. UNITED STATES.

United States District Court
S. D. New York.

Dec. 16, 1948.

Burlingham, Veeder, Clark & Hupper, New York City (Stanley R. Wright, New York City, of counsel), for plaintiff.

John F. X. McGohey, United States Attorney, New York City (Gilbert S. Fleischer, New York City, of counsel), for defendant.

CONGER, District Judge.

Suit brought pursuant to the Federal Tort Claims Act of 1946, 28 U.S.C.A. § 921 et seq. [now §§ 1346, 2671 et seq.].

On or about April 16 and 17, 1945, plaintiff's scow the "Christie No. 7" was being unloaded at Port Johnson, New Jersey of a cargo of steel landing mats by a number of longshoremen in the employ of defendant.

Plaintiff claims that these longshoremen in the unloading operation were so careless and negligent that they caused a heavy draft of the cargo to fall and strike the deck of the scow, thereby causing damage to the deck and underparts thereof to the extent of over $3,000.

The cargo to be unloaded was steel landing mats for use on airfields. These mats were in bundles on the deck of the scow. The bundles, weighing about a ton, were stowed on the deck of the scow three tiers high with scantlings between them. An electric stationary crane equipped with a block and fall, with a hook on the end was used to take these bundles off the deck and place them on the pier.

The very first thing to decide is whether the longshoremen were negligent in this work as claimed by the plaintiff. It is a bit difficult because each side produced only one witness as to this first and primary issue. Their stories cannot be reconciled. I must choose between them. If the unloading was being done as related by plaintiff's witness, the negligence is plain. If it was being done as defendant's foreman said it was, there was no negligence.

Plaintiff's witness was a bit contradictory in relating some of the details and not too explicit. It took quite a little questioning to bring out just what his side of the story was. Boiled down generally it is this: That the bundles were in the forepart of the deck; that the crane was near the aft end of the scow; that in order to reach the bundles the men had to pull the fall on the boom up to the bundles and then fasten the hook on the fall to the slings around the bundle and then start knocking the bundles off the tier; first to the second tier and then from the second tier to the deck; that one of these bundles dropped on the deck and cracked two deck planks and a stringer; that this method was used because the bundles were beyond the reach of the boom on the crane and had to be

pulled over so that there would be direct leverage for the pull. There were some details that either were not made clear or were not, in my opinion, probable.

This witness testified at one place that the crane let the block and the hook down; that it could not reach over to the tier. Then follows this bit of testimony:

"Q. Now, how did the block and hook get over to the tiers? A. They dragged them over.

"Q. Who dragged them over? A. One of the longshoremen."

If I understood the witness correctly this block and hook which he was testifying about as being dragged by one longshoreman weighed 1,034 pounds. In a sworn statement made several days later (April 20, 1945) this witness made no mention of the method which he later claimed the longshoremen were using in discharging the cargo, but reported only this: "That on April 16, 1945 my scow was unloading landing mates at Port Johnson. One lift was dropped or fell on the deck of my scow breaking at least two deck planks and one deck stringer." Incidentally the date when the incident occurred was April 17 and not April 16.

On the whole I was not too well satisfied with plaintiff's proof on this issue.

It does not seem reasonable nor necessary that these two ton bundles had to be handled as claimed by plaintiff. Of course, if the crane could not reach them it might be necessary to drag the hook over where it might be hooked on.

It later appeared that the crane was on the pier and close to the scow and about 40 feet from the aft end; that the boom on the crane was 60 feet long and could be turned in almost a circle. I see no reason why this boom could not be maneuvered so that the hook on the face would be right over the bundles so that a direct pull could be had.

I was rather impressed by the foreman of the longshoremen and by his testimony. He stated that these bundles were flat, composed of steel mats with scalloped edges and were 2 feet wide and 10 feet long. A number of these mats were laid on top of each other and strapped together. Of course, if these mats were flat they could not be rolled as claimed by plaintiff. This witness testified the boom could reach any part of the cargo. This is an important factor and would seem to obviate the necessity for using the method plaintiff claims was used.

This witness testified to the manner of unloading; that there was scantling between each bundle, which left a space for the cargo slings; that these slings were placed under and around the bundles at each end; that he then gave a signal to the crane operator to lift the load about 6 inches to make sure it was equalized and the load level; that he then gave the signal to take the draft up high enough to clear the rail; that having received the signal the crane operator would them take up the draft over the rail and swing it over to the deck; that men guided the load with two ropes attached to the slings; that no draft nor load was dropped to the deck of the scow on the 16th or 17th of April.

As I stated before, I have accepted the story of this witness of the defendant as the correct statement of the manner in which this unloading was performed on the 17th of April, 1945 and that being so, no negligence can be imputed to these stevedores on that day.

Plaintiff has failed to convince me there was negligence as claimed by it in this unloading.

By reason of my holding herein it is not necessary for me to discuss the alleged damage to the scow and the nature and extent thereof.

Complaint of the plaintiff is dismissed and defendant is entitled to judgment.